# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

TEXAS ASSOCIATION OF SCHOOL
BOARDS, INC.,

A Texas nonprofit corporation,

    *Plaintiff,*

vs.

TEXANS FOR EXCELLENCE IN
EDUCATION, INC.

A Delaware nonprofit corporation,

    *Defendant.*

Civil Action No. 1-25-cv-01863-ADA-DH

## <u>DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)</u>

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................................ 1

II. RELEVANT ALLEGATIONS (as pleaded by TASB) ...................................................... 2

III. LEGAL STANDARD ...................................................................................................... 3

IV. ARGUMENT .................................................................................................................. 3

    A. TASB's claim seeks to monopolize "the law," which is not copyrightable in the Fifth Circuit ................................................................................................ 3

    B. TASB's "coding structure" and taxonomy are functional systems and methods of operation, not protectable expression ........................................... 5

    C. TASB's alleged "compilation" claim fails because the selection and ordering of governing legal authorities are (at most) uncopyrightable facts or merged with the underlying legal idea. .......................................................... 7

    D. TASB's isolated "original text" allegations do not plausibly plead infringement of protectable expression sufficient to sustain the claim .................. 9

    E. TASB's copyright infringement claim fails because TEE's alleged use constitutes fair use under 17 U.S.C. § 107 .................................................... 10

        1. Purpose and Character of the Use ...................................................... 11

        2. Nature of the Copyrighted Work ....................................................... 12

        3. Amount and Substantiality of the Portion Used ................................. 13

        4. Effect on the Potential Market .......................................................... 13

    F. Summary ............................................................................................................ 14

    G. Dismissal is warranted. .................................................................................... 14

V. CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..................................................................................................3, 9

*Banks v. Manchester,*
128 U.S. 244 (1888)......................................................................................................4

*Bell v. Eagle Mt. Saginaw Indep. Sch. Dist.,*
27 F.4th 313 (5th Cir. 2022) ..............................................................................10, 11, 13

*Canadian Standards Ass'n v. P.S. Knight Co., Ltd.,*
112 F.4th 298 (5th Cir. 2024), cert. denied, 145 S. Ct. 1135 (2025) .............................. *passim*

*Doskocil Mfg. Co., Inc. v. Make Ideas, LLC,*
No. 3:21-CV-1098-B, 2023 WL 1448056 (N.D. Tex. Jan. 31, 2023) .......................................6

*Emanation Inc. v. Zomba Recording, Inc.,*
72 Fed. Appx. 187 (5th Cir. 2003).....................................................................................12

*Eng'g Dynamics, Inc. v. Structural Software, Inc.,*
26 F.3d 1335 (5th Cir. 1994), opinion supplemented on denial of reh'g,
46 F.3d 408 (5th Cir. 1995) ....................................................................................7, 10, 13

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
499 U.S. 340 (1991).........................................................................................................7, 9

*Gen. Universal Sys. v. Lee,*
379 F.3d 131 (5th Cir. 2004) ..............................................................................................6

*Georgia v. Pub.Resource.Org, Inc.,*
590 U.S. 255 (2020).....................................................................................................1, 4, 15

*Jett v. Dallas Indep. Sch. Dist.,*
491 U.S. 701 (1989).............................................................................................................1

*In re Katrina Canal Breaches Litig.,*
495 F.3d 191 (5th Cir. 2007) ...............................................................................................3

*Practice Mgmt. Info. Corp. v. Am. Med. Ass'n,*
121 F.3d 516 (9th Cir. 1997), amended by 133 F.3d 1140 (9th Cir. 1998)...........................5

*Stewart v. Abend,*
495 U.S. 207 (1990)......................................................................................................10, 12

*Stross v. Listingspark Brokerage, Inc.*,
  No. 1:23-CV-561-DAE, 2024 WL 4795984 (W.D. Tex. May 23, 2024)................................5

*Taylor v. IBM*,
  54 Fed. Appx. 794 (5th Cir. 2002).................................................................................6

*Triangle Publications, Inc. v. Knight-Ridder Newspapers, Inc.*,
  626 F.2d 1171 (5th Cir. 1980) ....................................................................11, 12, 13

*Veeck v. S. Bldg. Code Cong. Intern., Inc.*,
  293 F.3d 791 (5th Cir. 2002) ................................................................... *passim*

*Walker v. Beaumont Indep. Sch. Dist.*,
  938 F.3d 724 (5th Cir. 2019) ....................................................................................3

**Statutes**

17 U.S.C. § 102................................................................................................6, 12

17 U.S.C. § 107...........................................................................................9, 10, 11, 13

Tex. Educ. Code § 11.151 ..............................................................................................1

**Other Authorities**

37 C.F.R. § 202.1 ...........................................................................................................6

1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 5.12 (2025) ............................4

Fed. R. Civ. P. 12(b)(6) .................................................................................................2

## I. INTRODUCTION

In 2002, the Fifth Circuit decided *Veeck v. S. Bldg. Code Cong. Intern., Inc.*, 293 F.3d 791, 793 (5th Cir.). The opinion's first sentence states, "The issue in this *en banc* case is the extent to which a private organization may assert copyright protection for its model codes, after the models have been adopted by a legislative body and become 'the law.'" *Id. Veeck* answers the question: "'[T]he law,' whether it has its source in judicial opinions or statutes, ordinances or regulations, is not subject to federal copyright law." *Id.* at 800; *Canadian Standards Ass'n v. P.S. Knight Co., Ltd.*, 112 F.4th 298, 307 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 1135 (2025).

The Texas Education Code vests exclusive policymaking authority for an independent school district in that district's school board. TEX. EDUC. CODE § 11.151; *see Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). Accordingly, the official policies of Texas school boards are legislative. *See id.* In matters where a party seeks to assert copyright protection over formally enacted law or policy, the Supreme Court has made clear that no one can own the law. *E.g.*, *Georgia v. Pub. Resource.Org, Inc.*, 590 U.S. 255, 264 (2020). Furthermore, the Fifth Circuit has expressly stated that reprinting official municipal policies does not violate copyright law, even when a third party initially authored the policies. *Veeck*, 293 F.3d at 793.

Despite these precedents, Texas Association of School Boards, Inc. ("TASB") seeks to do exactly that: convert public law—the statutes, regulations, and other legal authorities that govern Texas public school districts—into private intellectual property enforceable against citizens and competitors. TASB's infringement theory—predicated on Texas for Excellence in Education's ("TEE") publication of "Legal Reference" materials that quote and compile governing legal authorities—fails to state a plausible claim for relief and should be dismissed.

TASB tries to plead around this black-letter rule by labeling functional features of its policy-reference system (letter codes, headings, topic summaries, and a taxonomy) as "copyright-

protected." But the Complaint's own allegations show that TASB's claim is aimed at controlling how others *identify, organize, and present the law*, not protecting any truly original expression separate from the underlying legal requirements. Under *Veeck*, the law must remain "free for publication to all," and copyright cannot be used to exclude the public from reproducing governing law in the only authoritative form it takes. 293 F.3d at 800.

Because TASB has not plausibly alleged that TEE copied protectable expression—as opposed to uncopyrightable law, facts, and functional systems—and has not addressed TEE's alleged use as fair use under the Copyright Act, TASB's lone claim under the Copyright Act should be dismissed under Rule 12(b)(6). FED. R. CIV. P. 12(b)(6).

## II. RELEVANT ALLEGATIONS
### (as pleaded by TASB)

TASB alleges it offers a Policy Reference Manual resource that compiles "federal and state statutes and regulations, case law, Texas Attorney General opinions, and Texas Commissioner of Education decisions," along with "commentary and expository text," into "(LEGAL) policies or frameworks." Complaint at ¶ 11. TASB further alleges each "(LEGAL) Framework" typically includes a "Coding Structure," "Expository Text," and a "Framework Compilation" that selects and arranges "Governing Law," meaning verbatim excerpts of statutes, regulations, and other legal authorities that are "in the public domain." Complaint at ¶ 15.

TASB acknowledges it "does not claim copyright rights in the Governing Law." Complaint at ¶ 18. Nonetheless, TASB alleges TEE infringed by creating "(Legal References)" that correspond to TASB's (LEGAL) Frameworks and that "quote statutes and regulations." Complaint at ¶ 30. TASB's core infringement allegations focus on TEE's alleged copying of (i) TASB's letter codes and subject-matter summaries, (ii) TASB's "Framework Compilations" (*i.e.*, selection and

2

arrangement of legal authorities), and (iii) (in limited examples) "original text" from TASB materials.

## III. LEGAL STANDARD

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted).

A complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion, the Court generally considers only (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters subject to judicial notice. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

## IV. ARGUMENT

### A.   <u>TASB's claim seeks to monopolize "the law," which is not copyrightable in the Fifth Circuit.</u>

The government edicts doctrine establishes that laws and legal materials belong to the public domain and cannot be subject to copyright protection. The Fifth Circuit's *en banc* decision in *Veeck* holds that "the law," including "statutes, ordinances or regulations," is in the public domain and "is not subject to federal copyright law." 293 F.3d at 800; *Canadian Standards*, 112 F.4th at 298. The decision explains that public ownership of the law means "the law" is "free for publication to all" and may be reproduced by citizens "for whatever use the citizens choose to

make of it." *Id.* (quoting *Banks v. Manchester*, 128 U.S. 244, 253 (1888)). This "metaphorical concept of citizen authorship" together with the need for citizens to have free access to the laws forms the ultimate holding of the *Banks* case. *Veeck*, 293 F.3d at 799. The doctrine recognizes that when private materials are adopted as law, they lose their copyright protection because they become public property. The doctrine applies with equal footing to state and municipal law. *See Georgia v. Public.Resource.Org, Inc.*, 590 U.S. 255, 269 (2020). The principle is also reflected in leading commentary recognizing that "state statutes, no less than federal statutes, are regarded as being in the public domain." 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 5.12 (2025).

Read collectively, the authority binding this circuit reflects a consistent, bedrock rule: the public must have unfettered access to the law and to the official legal materials created as part of the lawmaking function. *Veeck*, 293 F.3d at 800; *Georgia*, 590 U.S. at 263–69.

TASB's own pleading establishes that what it calls "(LEGAL) Frameworks" are built on verbatim excerpts of "Governing Law" (statutes, regulations, and other legal authorities) that are "in the public domain." Complaint at ¶ 18. It further alleges that TEE's corresponding "(Legal Reference)" materials "quote statutes and regulations," and that TEE's platform reproduces and displays those materials for school districts. Complaint at ¶ 30. That alleged conduct—publishing governing legal text and the legal rules applicable to Texas public schools—falls directly within *Veeck*'s rule that, "as law," privately drafted text adopted as governing law "enter[s] the public domain" and is not subject to the copyright holder's exclusive prerogatives. 293 F.3d at 805.

TASB cannot transform a claim about copying public law into a federal infringement action by asserting that it curated or packaged the law for convenience. *Veeck* explicitly rejects any approach that would reduce "free availability of the law" to whatever level the putative copyright

owner "chooses not to file suit." 293 F.3d at 799. The equity-based defense of copyright misuse forbids TASB's use of copyrights to secure an exclusive right or limited monopoly not granted by the Copyright Office, and which is contrary to public policy. *Stross v. Listingspark Brokerage, Inc.*, No. 1:23-CV-561-DAE, 2024 WL 4795984, at *3 (W.D. Tex. May 23, 2024) (citing *Veeck*, 293 F.3d at 822). To the extent TASB contends this case is like "incorporation by reference" disputes over technical standards (as some courts have addressed outside the Fifth Circuit), *Veeck* itself distinguished that line of authority from the "wholesale adoption" of a model code "precisely for use as legislation." *Veeck*, 293 F.3d at 803–05 (discussing, inter alia, *Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*, 121 F.3d 516 (9th Cir. 1997), amended by 133 F.3d 1140 (9th Cir. 1998)).

Recent Fifth Circuit authority confirms that *Veeck* is "explicit and controlling" when the allegedly copied work has been "fully incorporated by reference into" binding law. *Canadian Standards*, 112 F.4th at 300, 305–07. In that case, the Fifth Circuit held that copying "only 'the law' of Canada" did not constitute infringement under U.S. law once the model codes were incorporated into Canadian law. *Id.* at 305–07.

TASB's allegations fit comfortably within *Veeck* and *Canadian Standards*. TASB pleads that its (LEGAL) Frameworks are built on verbatim excerpts of "Governing Law" (which it acknowledges is "in the public domain"), and that TEE's (Legal References) likewise quote statutes and regulations. Those allegations establish that TASB is suing over dissemination and indexing of the law—precisely what *Veeck* and *Canadian Standards* place beyond the reach of copyright.

**B.**     **<u>TASB's "coding structure" and taxonomy are functional systems and methods of operation, not protectable expression.</u>**

TASB alleges TEE copied letter codes, subject-matter summaries, and a topic taxonomy used for indexing and navigating school-law materials. TASB uses the same letter coding structure

used by almost all Texas independent school districts. Complaint at ¶ 10, 16. Those letters may be accompanied by a single-sentence subject-matter summary. Complaint at ¶ 46. This "code" is then used by Texas school districts as a system or method of organizing their district policies.

TASB frames these as "original copyright-protected material," asserting it exercised "creativity" in assigning letter codes and topic/subtopic combinations. However, these elements are excluded from copyright protection under law. 17 U.S.C. § 102(b). Copyright protection does not extend to "ideas, procedures, processes, **systems**, [or] **methods of operation**." 17 U.S.C. § 102(b) (emphasis added). *Veeck* underscores that distinction in rejecting copyright claims that would restrict public access to the law. 293 F.3d at 800. TASB's taxonomy structure and organizational scheme, as pleaded, is exactly the kind of "system" and "method of operation" to which the Copyright Act excludes. They are tools—used in indices, browse boxes, searches, and cross-references, "so that board members, administrators, parents, students, and other users can quickly and easily find and learn the law relevant to public schools in Texas." Complaint at ¶ 13. They are not protectable under copyright law. Copyright protection does not extend to "ideas, processes, facts, elements dictated by considerations of efficiency, elements required by factors external to the program itself, or items taken from the public domain." *Gen. Universal Sys. v. Lee*, 379 F.3d 131 (5th Cir. 2004). These also generally follow the subject matter organization set out in the Texas Education Code itself.

Turning to the letter codes and subject summaries, TASB seeks exclusive use of combinations of three-four letters and terms like "TESTING PROGRAMS" and "ACADEMIC ACHIEVEMENT" to identify policies related to those specific subjects. "The Copyright Act does not protect fragmentary words or short phrases[.]" *Taylor v. IBM*, 54 Fed. Appx. 794 (5th Cir. 2002). Copyright regulation specifies that "words and short phrases such as names, titles, and

6

slogans" are not subject to copyright. 37 C.F.R. § 202.1; *Doskocil Mfg. Co., Inc. v. Make Ideas, LLC*, No. 3:21-CV-1098-B, 2023 WL 1448056, at \*12 (N.D. Tex. Jan. 31, 2023).

In this posture, TASB is asking the Court to grant it exclusive rights over the functional "handle" by which Texas school boards and the public locate governing legal requirements. That is incompatible with *Veeck*'s core premise that the law must be "free for publication to all," not fenced in by privately owned access keys.

**C.**     **TASB's alleged "compilation" claim fails because the selection and ordering of governing legal authorities are (at most) uncopyrightable facts or merged with the underlying legal idea.**

To claim infringement, TASB must plausibly allege copying of "constituent elements … that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). But where the "constituent elements" are statutes, regulations, and other legal authorities, those elements are not copyrightable expression at all. *Veeck*, 293 F.3d at 800. And where the asserted "originality" is simply selecting and ordering the law governing a topic, the scope of any potential protection is "thin" and cannot be used to block a competitor (or citizen) from reproducing substantially the same legal authorities needed to communicate the law. *Feist*, 499 U.S. at 349–51; *Veeck*, 293 F.3d at 801, 805.

TASB's complaint references its efforts in collecting and formatting legislation. But despite TASB's "sweat-of the brow" argument, the Fifth Circuit has expressly acknowledged that *Feist* discarded the "sweat-of-the-brow" doctrine for compilations in favor of an analysis focusing on the **originality** of the compiler's expression. *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1346 (5th Cir. 1994), opinion supplemented on denial of reh'g, 46 F.3d 408 (5th Cir. 1995). TASB does not and cannot demonstrate originality or protectable expression in its claimed work.

As an example, TASB alleges TEE copied TASB's "Framework Compilations" by listing "all or substantially all" of the same statutes and regulations "in the same, or substantially the same, order" as TASB. Complaint at ¶ 52. However, this is not a surprise, nor is it evidence of copyright infringement. When TASB and TEE both compile statutes relevant to, for example, campus law enforcement and security, it stands to reason that both would highlight the same statutes and regulations, and that both may list the facts in the same or similar order.

As *Veeck* explained, once legal text is enacted as law, it becomes a "fact" for copyright purposes and, as law, is "the unique, unalterable expression of the 'idea' that constitutes local law." 293 F.3d at 801. The Fifth Circuit further recognizes that where an "idea is susceptible to only one form of expression," the merger doctrine applies and the expression is excluded from copyright protection. *Id.* Thus, the facts, namely, that certain sections of the Texas Education Code or Occupations Code are more relevant to campus security than others, are not exclusive to TASB.

TASB's compilation allegations run directly into this principle. The supposed "selection and arrangement" at issue is, by TASB's own description, the organization of the governing legal authorities that constitute the legal framework schools must follow. But when the "dichotomy is clear," and the matter is law and legal facts, courts "are not permitted to substitute policy choices for the legislature's determination." *Veeck*, 293 F.3d at 802. Permitting TASB to enforce exclusive rights over the "same authorities" in "substantially the same sequence" would, in effect, allow a private party to control one of the most natural and useful ways to communicate the law to the public.

*Veeck* specifically notes that if a citizen wishes to publish the text of a law, the citizen "cannot develop his own, unique version and still publish an authoritative copy." 293 F.3d at 801. TASB's compilation theory would impose precisely that impermissible requirement—forcing

competitors and citizens to re-order or re-select legal authorities not because the law demands it, but to avoid infringement.

**D.** **TASB's isolated "original text" allegations do not plausibly plead infringement of protectable expression sufficient to sustain the claim.**

TASB's theory also fails for an independent pleading reason: the Complaint does not plausibly identify what protectable "original text" TEE allegedly copied, separate from uncopyrightable law and functional taxonomy. *See Iqbal*, 556 U.S. at 678. The Complaint's broad characterizations ("original text," "commentary," "expository text") do not supply enough factual content for the Court to infer that TEE copied protectable expression rather than public-domain legal materials. *See Feist*, 499 U.S. at 361 (requiring copying of original constituent elements).

TASB's Complaint is overwhelmingly directed at TEE's alleged copying of letter codes/subject headings and compilations of public legal authorities. The few allegations about "original text" are limited and conclusory, including an example involving a presentation slide that purportedly quoted text from a TASB landing page and included an excerpt from a TASB framework. The original text appears to be the letter codes and taxonomy. Additionally, the landing page quotations are not subject to copyright protection, as they are short descriptive and informative phrases that are neither expressive nor creative in the manner necessary to support such a claim.

Even accepting those allegations as true, they do not salvage TASB's broader infringement claim, because the Complaint's theory of liability is premised on TASB's attempt to control the public's use of law and the functional systems for organizing law. Under *Veeck*, the "law" is categorically "not subject to federal copyright law," and citizens may reproduce it for any purpose. 293 F.3d at 800. TASB's theory, as pleaded, conflicts with that rule at its core.

**E.** **TASB's copyright infringement claim fails because TEE's alleged use constitutes fair use under 17 U.S.C. § 107.**

Even if TASB's materials are protected by copyright, TEE's alleged use constitutes fair use under 17 U.S.C. § 107, providing a complete defense to TASB's copyright infringement claim. The fair use doctrine, codified in the Copyright Act, permits the unauthorized use of copyrighted materials for purposes such as "criticism, comment, news reporting, teaching, scholarship, or research." 17 U.S.C. § 107. This doctrine serves as an important limitation on copyright holders' exclusive rights, particularly when the public interest is served by allowing such use. To establish copyright infringement, a plaintiff must prove ownership of a valid copyright and copying of constituent elements of the work that are copyrightable. *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335 (5th Cir. 1994). However, even when these elements are established, the fair use doctrine provides an affirmative defense that can be properly considered at the motion to dismiss stage when the defense appears on the face of the complaint. *Bell v. Eagle Mt. Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 320 (5th Cir. 2022). When the pleadings demonstrate that the plaintiff cannot overcome affirmative defenses, the claim has "a built-in defense and is essentially self-defeating." *Id.* at 320 (stating that fair use is an affirmative defense that can support dismissal under Rule 12(b)(6)).

TASB's Complaint fails to sufficiently allege facts that would overcome TEE's fair use defense. The Complaint does not adequately address the four fair use factors or explain why TEE's educational use of primarily factual and legal materials would not constitute fair use. Given the strong public interest in access to legal information and the educational context in which TEE operates, TASB's copyright infringement claim is implausible on its face.

Courts consider four non-exclusive factors in determining whether a particular use constitutes fair use: (1) the purpose and character of the use; (2) the nature of the copyrighted

work; (3) the amount and substantiality of the portion used; and (4) the effect of the use upon the potential market for the copyrighted work. *Stewart v. Abend*, 495 U.S. 207 (1990). All four factors must be "explored, and the results weighed together, in light of the purposes of copyright." *Bell*, 27 F.4th 313 (5th Cir. 2022). A fair use defense can succeed even if one or more factors favor the copyright claimant. *Bell*, 27 F.4th at 321.

### 1. Purpose and Character of the Use

The first factor examines "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107. This factor is guided by the examples in the preamble to § 107, including whether the use is for criticism, comment, news reporting, teaching, and similar purposes. 17 U.S.C. § 107. Like TASB, TEE is also a non-profit organization. It offers its services to educate and support a consistent and uniform policy-making approach for Texas' independent school districts. The materials are being used to provide information about Texas school law and legal requirements to the public for their use and consumption, which directly aligns with the educational purposes favored by the fair use doctrine. Even if TEE's use has some commercial aspects, the educational purpose predominates, weighing in favor of fair use.

The Fifth Circuit's analysis of this factor in *Triangle Publications, Inc. v. Knight-Ridder Newspapers, Inc.*, is revealing. 626 F.2d 1171, 1175 (5th Cir. 1980). There, the Court reversed a district court's determination that finding a commercial purpose negated a fair-use defense, establishing "what amounts to virtually a per se rule that commercial motive destroys the defense of fair use." *Id.* The Court acknowledged that § 107 makes commercial motives relevant to fair use analysis, but, "it is certainly not decisive." *Id.* While commercial motives may cut against a fair use defense, the Court cautioned "against too much being given to the fact that the use [was] commercial" because the defendant was not attempting to palm off the plaintiff's product. *Id.* at

11

1176. As is the case here, defendant's references to plaintiff in *Triangle Publications* were for competitive purposes. *Id.*; *see also* Complaint at ¶ 29 ("TEE offers services similar to those offered by TASB and promotes itself as a lower-priced substitute for TASB.") The Court reversed and rendered, finding fair use because the public benefits from comparative advertising, thus minimizing the importance of the fact that a commercial use was involved. *Id.* at 1178.

> ## 2. Nature of the Copyrighted Work

The second factor considers the nature of the copyrighted work. Fair use is "more likely to be found in factual works than in fictional works." *Stewart v. Abend*, 495 U.S. 207 (1990). The law "generally recognizes a greater need to disseminate factual works than works of fiction or fantasy." *Id*. TASB's materials consist of compilations of Texas school law and legal requirements. These are primarily factual in nature, as they compile and organize existing legal requirements rather than creating new creative content. The Fifth Circuit has recognized that "the simple recording or reporting of facts is insufficient to satisfy the 'originality' requirement because 'the first person to find and report a particular fact has not created the fact; he or she has merely discovered its existence.'" *Emanation Inc. v. Zomba Recording, Inc.*, 72 Fed. Appx. 187 (5th Cir. 2003). While compilations may receive thin copyright protection for their selection and arrangement, the underlying legal requirements themselves are facts that cannot be copyrighted. 17 U.S.C. § 102. Moreover, the Fifth Circuit has noted that "commentators have argued that 'courts have tended to be most receptive to unauthorized use of educational, scientific, and historical works.'" *Triangle Publications*, 626 F.2d at 1176 (citing *Copyright Infringement and the First Amendment*, 79 Colum. L. Rev. 320, 326 n.42).

*Veeck* and *Canadian Standards* speak to this issue. *Veeck*, 293 F.3d at 799; *Canadian Standards*, 112 F.4th at 306. When materials are adopted as law, they enter the public domain. *Veeck*, 293 F.3d at 801. To the extent TASB's materials compile and report on legal requirements

that have been adopted by school districts, they may be considered in the public domain under *Veeck*, and copying of them is permitted as fair use.

### 3. Amount and Substantiality of the Portion Used

The third factor examines "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107. Courts consider whether the amount copied is "either a quantitatively or qualitatively significant part of the original." *Bell*, 27 F.4th at 324. Even a relatively small amount of copying can weigh against fair use if it captures the "heart" of the work. *Id.* While the complaint alleges that TEE copied TASB's materials, it fails to specify the exact amount and substantiality of the portion used. Without such specificity, TASB has not adequately alleged facts showing that this factor weighs against fair use. Moreover, the copying TASB alleges, namely, that of facts, laws, regulations, codes and short phrases, such use falls outside copyright infringement because copyright protection does not extend to such works.

### 4. Effect on the Potential Market

The fourth factor examines "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. This factor, "undoubtedly the single most important element of fair use," *Bell*, 27 F.4th at 324, excludes any adverse impact on the potential market for TASB's work by reason of TEE having copied noncopyrightable factual material. *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1347 (5th Cir. 1994), opinion supplemented on denial of reh'g, 46 F.3d 408 (5th Cir. 1995).

TASB's Complaint fails to adequately allege how TEE's use of its materials has harmed or would harm the market for TASB's Policy Service materials. Moreover, TASB affirmatively provides that TEE has had little impact on its market. Specifically, TASB alleges that TEE has been offering its competing services around June 2023. Complaint at ¶ 29. Yet, "[a]s of November 18, 2025, TASB Policy Service serves more than 99% of the school districts in Texas." Complaint

at ¶ 10. Accordingly, TASB has not alleged a sufficient impact on the commercial value of the copyright. *See Triangle Publications*, 626 F.2d at 1177 (finding fair use of a copyrighted work after the Court was "simply unable to find any effect other than possibly de minimis on the commercial value of the copyright.")

Given the educational and legal nature of the materials, the public interest in access to legal information, and TASB's own admissions regarding the de minimis impact TEE's use has had to date, TASB has not demonstrated that TEE is likely to supplant the market for TASB's services. To the extent that TASB is providing unique and creative insights to supplement Texas educational law and policy, school districts that value TASB's insights would continue to use TASB's services regardless of TEE's Policy Connect platform. Everything else is excluded from copyright protection.

## F. <u>Summary</u>

The fair use doctrine provides a complete defense to TASB's copyright infringement claim. All four fair use factors—the educational purpose of TEE's use, the factual and legal nature of TASB's materials, the lack of specificity regarding the amount used, and the absence of alleged market harm—weigh in favor of finding fair use. The Fifth Circuit's decision in *Veeck* further supports this conclusion by establishing that model codes and similar legal materials enter the public domain when adopted as law. TASB's Complaint fails to sufficiently allege facts that would overcome this defense, rendering the claim legally insufficient. Accordingly, the Court should dismiss TASB's copyright infringement claim pursuant to Rule 12(b)(6).

## G. <u>Dismissal is warranted.</u>

Because TASB's infringement theory is targeted at uncopyrightable subject matter— public law, facts, and functional systems for accessing and communicating the law—the Complaint fails to state a plausible claim for relief under the Copyright Act. The Fifth Circuit's en

banc holding in *Veeck* requires dismissal where the alleged "copying" is copying of "the law" that belongs to the public and is "free for publication to all." 293 F.3d at 800. The Fifth Circuit has also confirmed that *Veeck's* holding is "explicit and controlling," and applies without drawing distinctions between jurisdictions when the copied material is law. *Canadian Standards*, 112 F.4th at 300, 305–07.

And the Supreme Court's articulation of the government edicts doctrine confirms that courts do not engage in a case-by-case copyrightability inquiry when the asserted work is produced as part of the lawmaking function; it is categorically ineligible. *Georgia*, 590 U.S. at 263–69. Allowing TASB to fence off the very legal frameworks school boards must follow—by asserting copyright in the identifying codes and the curated list of the governing statutes—would impermissibly create an "economy-class" version of the law for those who cannot afford TASB's product. *Id.* at 271–73.

## V.  CONCLUSION

For the foregoing reasons, Defendant Texans for Excellence in Education, Inc. respectfully requests that the Court grant its Rule 12(b)(6) motion and dismiss TASB's Complaint with prejudice.

Respectfully submitted,

*/s/ Lee B. Hunt*
Timothy Davis (pending admission)
State Bar No. 24086142
tdavis@jw.com
Lee B. Hunt
State Bar No. 24082257
lhunt@jw.com
Allison Allman
State Bar No. 24094023
aallman@jw.com
JACKSON WALKER LLP
777 Main Street, Suite 2100
Fort Worth, Texas 76102-5360
Tel. (817) 334-7270
Fax (817) 870-5146

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served upon all counsel of record on January 5, 2026 via electronic filing.

*/s/ Lee B. Hunt*
Lee B. Hunt