**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |  |
|---|---|---|
| TEXAS ASSOCIATION OF SCHOOL BOARDS, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 1-25-cv-1863-ADA |
| | § § | |
| TEXANS FOR EXCELLENCE IN EDUCATION, INC., | § § § | |
| Defendant. | § § § | |

**DECLARATION OF AMANDA BIGBEE IN SUPPORT OF OPPOSED MOTION FOR PRELIMINARY INJUNCTION**

I, Amanda Bigbee, declare:

1.      I submit this declaration in support of the motion for preliminary injunction ("**Motion**") filed by Texas Association of School Boards, Inc. (" **TASB**"). In this declaration, "Exhibit" and "Exh." refer to the numbered exhibits included in the Appendix of Exhibits submitted with the Motion. "FAC Exh." refers to an exhibit previously on file with the Court as an exhibit to Plaintiff's First Amended Complaint (ECF Doc. 12).

2.      I have been the Division Director of Policy Service at the Texas Association of School Boards, Inc. (TASB) since November 2023. In this role, I oversee a team of nineteen employees in the Policy Service division. Policy services are available to the school districts of Texas public school boards who are active members of TASB and who elect to join Policy Service as a subscribing member. As the Division Director of TASB Policy

Service, I also work collaboratively with other TASB divisions, including TASB Legal Services.

3.    Before I was employed by TASB, I was the in-house attorney for the Keller Independent School District (KISD) from July 2008 until I resigned to take the position with TASB. KISD is a large suburban school district that serves approximately 31,000 students. In that role, I was responsible for managing the legal needs of the school district.  While an employee of KISD I also served as the public information officer, Title IX coordinator, the policy contact for the school district, and performed other duties as assigned. As the policy contact, I had consistent communication with TASB Policy Service and the TASB policy consultant assigned to the district regarding policy matters, and I routinely utilized TASB Policy Online® to access the KISD policy manual and the Policy Reference Manual.

4.    Before working at KISD, I was an attorney at two different law firms from 2002 until 2008, where I represented school districts in litigation and provided proactive legal assistance to school board members and school administrators. I accessed and used school district policy manuals routinely in that work, as well.

5.    TASB is a voluntary, nonprofit, nonpartisan educational association established in 1949 to serve local Texas school boards. TASB's Policy Service offers a variety of elective services to help Texas school districts whose boards are members of TASB meet the challenges of a rapidly changing statutory and regulatory environment for school district governance and management. These services are available via written agreement for additional fees and include: licensed access to TASB's Policy Reference Manual resource and constituent (LEGAL) Frameworks, described below; individualized

local policy recommendations, policy consulting, policy audit services, and model publications like a model student code of conduct, model student handbook, and a regulations resource manual; access to Policy Online®, TASB's proprietary online policy platform; and policy updating services. Despite the additional expense of these elective services, while at KISD, I viewed them as an essential resource to the district. As of November 18, 2025, TASB Policy Service serves more than 99% of the school districts in Texas. **Exhibit 12** is a TASB publication describing the history of the Policy Service division, and based on my personal knowledge, my review of TASB business records and other historical documents, and conversations with longtime TASB employees, the facts stated in Exhibit 12 are true and correct.

6. TASB informs and updates subscribing school districts about the current laws governing Texas public schools with the Policy Reference Manual resource ("**PRM**") from its Policy Service. The PRM includes hundreds of different (LEGAL) policies or frameworks ("**(LEGAL) Frameworks**"), each providing the legal framework for a different topical area of school governance and operations. Each (LEGAL) Framework includes: quotations and citations to legal authorities (e.g., federal and state statutes and regulations, case law, Texas Attorney General opinions, and Texas Commissioner of Education decisions) ("**Governing Law**") that have been selected and arranged by TASB employees; and paraphrasing, margin notes, commentary and other expository text authored by TASB ("**Expository Text**") regarding the Governing Law.

7. TASB has organized Texas public school law into an original and comprehensive taxonomy of school law topics. TASB's taxonomy organizes all school law

topics into seven high-level sections of school law ("**School Law Sections**"). Currently, the School Law Sections are: A (Basic District Foundations), B (Local Governance), C (Business and Support Services), D (Personnel), E (Instruction), F (Students), and G (Community and Governmental Relations). TASB's taxonomy further subdivides each School Law Section into different topical areas.

8. In TASB's taxonomy, each different topical area of school law is uniquely identified by a "**Coding Structure**" (or, sometimes, a "code"). Each Coding Structure consists of a unique "**Letter Code**" combined with a "**Subject Matter Summary**" that includes a topic and optional subtopic. The Coding Structures collectively express TASB's taxonomy of Texas public school law topics. TASB uses the same Coding Structure to organize some of its other products as well. TASB's LOCAL policies and Regulations Resource Manual are also organized around the Coding Structure. The taxonomy evolves as Texas public school law changes. Also, on occasion, TASB may reorganize the taxonomy without being prompted by a change in the law, for example, if TASB staff determines that another way of organizing the material would benefit member school districts.

9. A Letter Code is a character string of 2-5 characters, e.g, "AE" or "EHBCA," where the first letter is one of A to G corresponding to one of the School Law Sections. TASB originally coined the Letter Codes and continues to revise or delete existing codes and coin new ones to express decisions made by TASB regarding the arrangement of its school law taxonomy. The Letter Codes do not correspond to section headings in the Texas Education Code or related regulations, and based on my review of historical records, I know they were originally created by TASB. The selection of letters in a Letter Code is not

dictated or predetermined by the subject matter. In many cases, the same topic could reasonably be situated in different School Law Sections.

10. The Subject Matter Summary identifies the subject matter of a (LEGAL) Framework and describes the Governing Law in the policy. For (LEGAL) Frameworks with a two-letter Letter Code, the Subject Matter is a topic; for those with three or more letters in the Letter Code, the Subject Matter Summary includes a topic and a subtopic. For example, for the (LEGAL) Framework having the Letter Code "CKED," the topic is "Security Personnel" and the subtopic is "Other Security Arrangements."

11. In TASB's taxonomy, the Letter Codes situate the subject matter of the (LEGAL) Reference within TASB's taxonomy of school law. The first letter situates the subject matter of the policy within one of the School Law Sections. The selection and number of subsequent letters in the Letter Code identify the level of each topic within the hierarchy and the relationship between topics and subtopics. The topical text of the Subject Matter Summary differentiates the scope of each (LEGAL) Framework from the scope of the other (LEGAL) Frameworks and also helps identify the level of each topic within the hierarchy and the relationship between topics and subtopics.

12. There are multiple ways to arrange a taxonomy of school law topics. One way would be to arrange the topics alphabetically by the summary of the topic. Another taxonomy could be arranged as a keyword index, such as the Cross-Index in TASB's Update 50. (FAC Exh. Z, ECF Doc. 12-26). Other taxonomies could organize the subject matter in the same way the Education Code is organized, or in the same way it is organized

5

in School Law textbooks (e.g., The Educator's Guide to Texas School Law or American Public School Law).

13. Based on my first-hand experience working with TASB's Policy Service and Legal Services teams to update (LEGAL) Frameworks, there are multiple reasonable alternative ways to compile statutes, regulations, and other legal authorities into one or more (LEGAL) Frameworks, there are multiple reasonable alternative options for situating a new or revised (LEGAL) Framework within TASB's taxonomy (i.e., assigning a Letter Code), and multiple reasonable alternative ways to describe or express, in the topical text of the Subject Matter Summary, the subject matter of the compilation of the legal authorities within a (LEGAL) Framework. In each of these decisions, TASB has an opportunity to and does exercise professional judgment, skill, and creativity. The coding decisions are often debated, and on occasion, not all team members agree that the final outcome is the best one.

14. TASB and TEE have each published policy materials covering the 2025 Texas statute requiring the display of the Ten Commandments in school classrooms, Texas Education Code § 1.0041.  In Update 126, TASB added this new statute to its CLE(LEGAL) Framework relating to *flag* displays—CLE (LEGAL) Buildings, Grounds, and Equipment Management/Flag Displays—and changed the subtopic from "flag displays" to "required displays" (CLE (LEGAL) Buildings, Grounds, and Equipment Management/Required Displays) to reflect the expanded scope of the guidance. Based on the publicly-available copies of its policy, Defendant TEE chose instead to reflect the same content in its Local policy EMI(LOCAL), which covers "Miscellaneous Instructional Policies: Study of Religion."

TASB and TEE came up with different ways to classify and describe the same statutory subject matter. True and correct copies of TASB's CLE(LEGAL) and TEE's EMI (LOCAL) are exhibits N and S to the First Amended Complaint (, ECF Docs. 12-14 and 12-18).

15. For each high-level School Law Section of the taxonomy, TASB provides (and regularly updates) a table of contents or index ("**Section Index**"). Each Section Index is a selection and arrangement—a "compilation" of—all Coding Structures in a School Law Section. The Letter Codes, topics, and subtopics in the Coding Structures provide the text for the Section Index. For example, Section Index D includes the Letter Codes, topics, and subtopics from the Coding Structures that begin with the letter "D." The Letter Codes determine how the topics and subtopics are arranged in the index. The Section Indices express TASB's taxonomy of public school law in two ways. First, for each School Law Section, the current Section Index expresses the current version of TASB's taxonomy for *that* area of school law. Second, the collection of current Section Indices for *all* School Law Sections collectively express the current version of TASB's *entire* taxonomy of school law.

16. **Exhibit 2** includes true and correct copies of the Section Indices for Sections A through G from Updates 110 (B), 115 (D), 118 (A), 121 (E, G), and 122 (C, F). (Exhibit 2 is a copy of FAC Exh. C, ECF Doc. 12-3)).

17. Policy Online® is TASB's proprietary, public-facing web-based software application that publishes the localized policy manual and the PRM for TASB Policy Service subscribers and provides access to TASB's subscription-based policy publications and resources. Each different (LEGAL) Framework (and its corresponding local policy and related content) is stored, indexed, and displayed on Policy Online separately and

independently from the other (LEGAL) Frameworks.  The Coding Structures are combined into a navigation index. Policy Online includes search and display features (e.g., a browse box) that enable users to browse the navigation index of Coding Structures, search for keywords within the Letter Codes, topics, and subtopics, and navigate easily to policies.

18.     TASB Policy Service subscribers and their users can use the Coding Structures taxonomy and the different (LEGAL) Frameworks to quickly and easily find and learn the law relevant to public schools in Texas on any topic. Experienced users (for example, school counsel, administrative staff, Superintendents) may have memorized the Letter Codes for the (LEGAL) Frameworks that address the law for frequently recurring situations – these users may just search for the Letter Code or a keyword. Another user, for example a school principal addressing an unusual student issue, may need to browse the topics and subtopics in the index of Coding Structures to locate the correct (LEGAL) Framework.  The index also allows a reader to determine if all of the material they need to understand on a given topic is found within one code, or if the material is subdivided into a number of subtopics that should be reviewed. Based on my personal experience and interactions with other educators, I believe the Coding Structures and (LEGAL) Frameworks are useful and valuable resources provided by TASB to subscriber school districts.

19.     **Exhibit 13** includes true and correct copies of screenshots of the Policy Online site for Dripping Springs ISD, a current subscriber to TASB's Policy Service, showing how the TASB Coding Structures appear on Policy Online. (FAC Exh. CC, ECF Doc. 12-29, illustrates several ways a user can navigate the Policy Online interface to retrieve the

current version of TASB's FB (LEGAL) Framework. The user has several options after navigating to the Policy Online landing page. The user has the option of expanding the browse box to show all the codes (p.1). Another option for the user, not shown in FAC Exh. CC, would be to expand only the F section. The user looking for FB can expand section F and select the link for FB Equal Educational Opportunity (p. 2), and display the Legal FB (LEGAL) Framework with additional tabs to display the corresponding Local Policy and exhibits, if any (p. 3).

20. Because the laws and other legal authorities governing public school districts are constantly evolving, TASB's Policy Service publishes regular numbered updates ("**Numbered Updates**") to (LEGAL) Frameworks. It takes an extraordinary amount of time, effort, specialized skill, and creative effort to create, maintain, revise, and otherwise update hundreds of (LEGAL) Frameworks. For example, after each session of the Texas Legislature, TASB Legal Services attorneys and TASB Policy Service staff (a combined total of approximately 25 paid professionals) spend hundreds of hours identifying and analyzing enrolled legislation to determine how it applies to Texas public schools and how to integrate it into existing or newly-created (LEGAL) Frameworks. In years without a state legislative session, TASB's Legal Services and Policy Service teams monitor federal laws, state and federal rulemaking, case law, Texas Commissioner of Education decisions, and Texas Attorney General opinions for potential inclusion in the (LEGAL) Frameworks.

21. Each Numbered Update includes one or more, sometimes many, different, new or updated (LEGAL) Frameworks, updated Section Indices (if any), and (usually) an

Explanatory Notes section explaining the changes in the (LEGAL) Frameworks and Section Indices. Some updated (LEGAL) Frameworks may be revised versions of preexisting frameworks, and some may be entirely new; but generally, every (LEGAL) Framework that is included in a Numbered Update is included because it is new or has been revised. When a new (LEGAL) Framework is created, for example, by combining legal materials from a preexisting (LEGAL) Framework with new legal materials, TASB must decide where to situate the new (LEGAL) Framework in the taxonomy and what Letter Code to use for the new code. Similarly, when the content of an existing (LEGAL) Framework is changed, TASB must decide whether the revised code should be relocated within the taxonomy, what new Letter Code to use, and whether and how to change the Subject Matter Summary to more effectively describe the updated content of the revised code and differentiate that content from other (LEGAL) Frameworks. These decisions are expressed in the Letter Codes and Subject Matter Summaries of the new or revised Coding Structures. These expressive decisions require the exercise of professional judgment and skill and are inherently creative because there are many different ways that a taxonomy of school law topics can be expressed and many different ways different collections of legal authorities can be selected, arranged, and described.

22. A Coding Structure is not always revised in an update. For example, the Coding Structure may not be revised when the revisions to a (LEGAL) Framework are limited to changing the compilation of Governing Law and/or Expository Text. Other times, however, the Coding Structure is revised. For example, the Letter Code may be changed because the (LEGAL) Framework was relocated within the taxonomy, or a new (LEGAL)

10

Framework was added. The Subject Matter Summary may be changed to more effectively describe revisions to the content of a new or revised (LEGAL) Framework. Changes in the Coding Structures are reflected in revised Section Indices. The text of the Section Index changes when the Letter Code or Subject Matter Summary of a Coding Structure is changed; the selection and arrangement of codes in a Section Index changes when a Subject Matter Summary is changed; and the arrangement of topics changes when a Letter Code is changed, added, or deleted. A creative revision to any of the Coding Structures results in a creative revision to the Section Index. When the Section Index changes, so does the taxonomy expressed in the Section Index. An updated Section Index in a Numbered Update expresses a new, current, and different taxonomy that supersedes the old taxonomy.

23. The Coding Structure is a critical, important part of a (LEGAL) Framework. The Letter Code and Subject Matter Summary in a TASB (LEGAL) Framework are included in the header and inform users of the content of each (LEGAL) Framework and where it can be found in TASB's taxonomy of school law topics. The Letter Code also provides a short handle for ease of reference and discussion.

24. The updated and new Coding Structures and Section Indices are critical, important parts of each Numbered Update. In addition to their importance to the updated (LEGAL) Frameworks, the Coding Structures are used in the Explanatory Notes section to describe the changes in the current Numbered Update and in the updated Section Indices. The updated Section Indices express the current state of TASB's taxonomy of school law topics as of the Numbered Update. In addition, the Updated Section Indices in each

update can be used as a hard-copy resource. Although TASB currently uses Policy Online to deliver Numbered Updates, it encourages its Policy Service subscribers to always maintain a hard-copy version of all (LEGAL) Frameworks and Section Indices, and many districts still pay TASB to send them a hard copy. Each Numbered Update includes instructions about how to integrate new content into the hard copy version, whether to replace or delete existing (LEGAL) Frameworks or Section Indices or add new ones. The hard-copy version of the Section Index is especially valuable for basic research when the user does not know the Letter Code of a topic by heart and Policy Online is unavailable.

25. Looking back to my experience as a TASB Policy Service user, before I was employed by TASB, I can attest to the importance of the Coding Structures. The Coding Structure is critical in quickly accessing and understanding a particular topic. As a lawyer, part of the power of it is knowing you can read one code and, based on the topic description, can expect that everything you need may be in that code. It allowed me to work confidently, as I trusted that what I needed to get started on that topic was included in that place. The topic and subtopic names would also alert me to the limitations of what was in a code and if further research was needed.

26. In my experience, the Coding Structure also works as a critical shorthand and almost a secondary language for many educators and those who work with them. In my experience, those in schools love a good acronym, and we gravitate toward shortcuts to explain more complicated topics. I remember vividly when the Religious Viewpoints Antidiscrimination Act was passed in 2007, and the material was housed in large part in code FNA. I may not have remembered the exact name of the law, but I knew I could find

the important details in FNA. I knew F was related to students, and I knew FN related to student rights and responsibilities, so anything about student First Amendment rights is likely to be in FN.

27.     When I was the policy contact at the school district, not only did I look at updates, I studied them.  I was responsible for processing and then presenting the changes to the district Board. I reviewed all (LEGAL) Frameworks, and the district staff worked on local policy language as a team. I would share which codes were being changed with impacted stakeholders. I believe everyone in district administration knew what a numbered update was and was prepared at least twice a year to dig into policy and understand the revisions. The Coding Structure also helps with that because the breakdown into sections enables you to assign an area to a specific department of a district.  If it was a "D" policy, it would go to Human Resources for consideration and implementation.  "E"s would go to Curriculum and Instruction, but the EHBA series had to be run by the special education department.  The district's Chief Financial Officer looked at all the Cs, and so on.  The section markers made it easy to know at a glance which department would ultimately be responsible for ensuring implementation of the new material.

28.     The following statements are based on my review of historical documents and copies of past updates. TASB has regularly issued Numbered Updates since Update 4, issued in 1977, through Update 126, which was issued after the General and Special sessions of the 89th Legislature in 2025.  Due to the extensive restructuring and revision of Texas education statutes in the 74th Legislature, TASB's Update 50, issued in 1995,

13

included every (LEGAL) Framework in use at the time. Updates 43, 47, and 50-126 were first published in or after 1990. TASB currently distributes Numbered Updates to Policy Service subscribers through Policy Online.

29. TASB has registered copyrights in Numbered Updates Nos. 43, 47, 50-105, and 107-125 (**"Registered Updates"**). True and correct copies of the Certificates of Registration from the U.S. Copyright Office in the Registered Updates were filed with the Complaint as FAC Exh. A (ECF Doc. 12-1). For each Registered Update, TASB maintains a copy of the deposit specimen of the Numbered Update. (The deposit specimen is the copy of the work that is deposited with the United States Copyright Office in connection with an application to register a copyright in the work.)  True and correct copies of the deposit specimens for Update 50 and Update 123 were filed with the Complaint as FAC Exh. Z (ECF Doc. 12-26) and FAC Exh. AA (ECF Doc. 12-27).

30. Each Registered Update includes a selection and arrangement of (LEGAL) Frameworks, Explanatory Notes, and/or Section Indices, and the Coding Structures used throughout. For the reasons described above, these separate and independent constituent works or contributions within each Numbered Update include creative and original content, including the Expository Text and selection and arrangement of all content within each constituent (LEGAL) Framework and the Explanatory Notes, the text and selection and arrangement of content in revised Section Indices and Explanatory Notes, if any, and the text of the new or revised Coding Structures in the (LEGAL) Frameworks, Section Indices, and/or Explanatory Notes.

31. The content in the Registered Updates was independently created and authored by TASB employees within the scope of their employment. In addition, it is my opinion that it was well documented and routine practice at TASB, going back at least as far back as Update 47, for TASB employees within the Policy Service and Legal divisions to prepare the content of Numbered Updates. When I refer to creative actions or decisions by TASB, I refer to actions taken or decisions made by employees of TASB. These statements and opinions are based in part on my personal knowledge and institutional knowledge acquired during my tenure as TASB Division Director of Policy Service, including knowledge gained from conversations with former Policy Service team members who have worked on Numbered Updates since 1977, my review of TASB business records and other historical materials relating to the history of the Policy Service division, and my review of past updates discussed in more detail in paragraph 33 below.

32. **Exhibit 1** lists a subset of TASB's current Coding Structures (Letter Codes, Topics and Subtopics), along with the update number of the Numbered Updates where the current Coding Structure first appeared in a (LEGAL) Framework and Section Index. (Exhibit 1 is a copy of FAC Exh. B , ECF Doc. 12-2). Each Coding Structure listed in Exhibit 1 includes new material that has been registered with the Copyright Office in the Updates named in Exhibit 1. **Exhibit 9** includes true and correct copies of excerpts from the deposit specimen copies of Numbered Updates maintained by TASB, including copies of (LEGAL) Frameworks, Explanatory Notes, and Section Indices in the deposit specimen copies for the Registered Updates specified in the exhibit.

33.     In my opinion, when the Policy Service team decides to change a Coding Structure or to add or delete a (LEGAL) Framework, the decision to do so certainly reflects creativity and originality. This is true as a general matter for the reasons I have explained elsewhere in this Declaration. In addition, within the Policy Service team, there is a reluctance to change Coding Structures because changes to a Coding Structure require reprogramming of software and other resources. We are also reluctant to change codes because we know our subscribers rely on the taxonomy, and changes to it can cause confusion. Changing codes requires clear communication with our subscribers. In other words, adding a new Coding Structure or changing an existing Coding Structure reflects an intentional decision, with discussion or debate, within the Policy Service and Legal Services teams about the change.  This means that TASB employees had to decide on which version of the Coding Structure would be most effective or helpful for the users. In this context, determining what is effective or helpful for users requires consideration and balancing of factors such as: accuracy and relative completeness of the Subject Matter Summary; ensuring that the topic and subtopic provide enough information to describe the subject matter, but are short enough to be easily read; preventing (LEGAL) Frameworks from becoming too large and unwieldy; and where to locate the (LEGAL) Framework within TASB's taxonomy so that users can quickly find the legal authorities they need. All of these factors call for TASB employees to exercise extensive professional skill, judgment, and creativity. In **Exhibit 3**, in the "Creativity" column,  I  have supplied, for each Coding Structure listed in Exhibit 1, an explanation of some of the creative choices reflected in the Coding Structure. The opinions in this paragraph are based on: my first-hand experience

16

working with the Policy Service team on four recent Numbered Updates; my conversations and interactions with current and former Policy Service team members, some of whom have worked on Numbered Updates since 1977; my experience as a school lawyer reviewing and using Numbered Updates for over 20 years; and my review of the content of the Explanatory Notes and other content in the Numbered Updates, the evolution of the Coding Structures, and contemporaneous records regularly kept by the Policy Service team in connection with TASB's regular business activity of creating Numbered Updates, including comments and notes on team deliberations.

34. The Section Indices for each School Law Section have evolved over time as TASB has revised, added or deleted Coding Structures. On rare occasions, TASB will publish an unrevised Section Index in a Numbered Update. In Update 95, for example, TASB republished the Section Indices A-G without revision to address a system configuration issue. Except for the rare occasions when TASB publishes a Section Index without revision, the Section Indices included in Numbered Updates include new text in addition to the text and compilation included in previous Updates. Because the new text in a Section Index comes from a new or revised Coding Structure, it includes creative and original content for the reasons discussed above. **Exhibit 4** illustrates the evolution of Section Indices in the Registered Updates. Exhibit 4 includes, for each different School Law Section, true and correct copies of each iteration of the Section Index in different Registered Updates, with highlighting to show new or changed text or other revisions compared to the previous update. The documents in Exhibit 4 are true and correct copies of portions of TASB's record copy of the deposit specimen for each Registered Update.

35. TASB's model (LOCAL) Policies are different from its (LEGAL) Frameworks. As part of TASB's Policy Service, TASB assists school district subscribers with the development of local school policies adapted from TASB's model or sample "(LOCAL) policies." TASB circulates model (LOCAL) Policies for consideration, customization, and/or adoption by Policy Service subscribers, typically in coordination with (LEGAL) Frameworks in a Numbered Update. In addition, the Policy Service team prepares customized local policy recommendations. TASB's model (LOCAL) Policies are provided under license to Policy Service subscribers for internal use and adaptation. TASB's (LOCAL) Policies use the same Coding Structure as the (LEGAL) Framework on the same subject matter – the designations (LOCAL) and (LEGAL) differentiate the policies – and the (LEGAL) Framework informs the content of the (LOCAL) policy. But the content is different. TASB's (LEGAL) Frameworks provide the legal framework on the subject matter but are not suitable or available for, and not subject to, adoption as a (LOCAL) policy. Indeed, we instruct Policy Service subscribers *not* to adopt the (LEGAL) Frameworks.

36. The (LOCAL) policies are unique to each district. Local policies are needed in specific circumstances: (a) to respond to a legal requirement for the board to adopt policy; (b) reduce potential legal risk by mandating consistent practices across the district, such as the response to allegations of discrimination or harassment; (c) declare the district's choice among legal options; or (d) clarify administrative authority for managing district business. There are many codes that house a (LEGAL) Framework but do not include a local policy recommendation, as the material is legal, and there is no requirement to have a local policy, nor are there any choices to make regarding the legal requirement. When

18

local policy statements are required by law or would contribute to district operations or would otherwise minimize risk, TASB Policy Service may create standardized policy recommendations, taking into consideration common responses to choices allowed by the law. From these local policy versions, some districts may need to further tailor the policy statement to match local practices, which creates a unique local policy specific to that district.

37.     In some cases, a district seeks to house language in a local policy that does not cleanly fit any of the existing codes.  In those instances, TASB Policy Service works with the district to determine where best to house the material within TASB's taxonomy and, in some cases, decides to create a code to house the content.  In doing so, that new code is included in the index as it has been assigned a certain topic and, as applicable, subtopic.  For example, only seven school districts have a local policy EIAB relating to Academic Achievement/Makeup Work. TASB has not created model local language for this code, nor is there relevant legal content, but TASB has assisted districts by creating a place in TASB's taxonomy for the content. Once a code is created, it is available should any other member district want local language at that code.

38.     Based on a review of publicly available information, it is my understanding that TEE offers services similar to those offered by TASB and offers "Policy/Legal Guidance and Assistance" services to its members as an alternative to and substitute for TASB's Policy Service. **Exhibit 17** includes a true and correct copy of a mailer sent by TEE to school board members in August 2023. The 2023 Mailer includes statements such as: "Why Should an ISD Leave TASB," "Finally ISD's have an alternative to TASB", "[TEE] is a free-

market alternative to [TASB]," and "will continually offer the best and most cost efficient options for ISD's" (Exhibit 17). **Exhibit 10** includes true and correct screenshots from TEE's current website ([www.texansforexcellence.org](http://www.texansforexcellence.org)) (the "**TEE Website**").  The screenshots in Exhibit 8 were made in January 2026, but the same content was on the TEE website in 2023, to the best of my recollection. The TEE Website includes a web page entitled "The Case for Leaving TASB and Joining TEE" that says: "Rather than fitting every district into a 1 size fits all box, TEE will customize our service approach according to each ISD's specific needs" and "TEE's membership fees are ½ of TASB." (Exhibit 10, pp. 3-4). TEE states on the home page of its website: "TEE seeks to implement and provide guidance to the current ISD policy frameworks to aid Texas independent school districts, their boards, administrators, and teachers in achieving these critical objectives." (Exhibit 10, pg. 1). TEE's Policy Legal/Guidance and Assistance services include providing local policies and legal guidance. FAC Exh. W, ECF Doc. 1-23, is a true and correct copy of a presentation made by TEE to the school Board of Dripping Springs ISD. It states: "TEE provides best available legal guidance on state and federal law and regulation." TEE initially promoted itself as a low-priced substitute for TASB. More recently, TEE's social media posts advertise "Service Without Membership Fees."

39.     It is my understanding, based on TEE's public statements and materials, that TEE's Policy/Legal Guidance and Assistance services include providing its customers with "(Legal Reference)" materials that quote statutes and regulations and local policy recommendations. The TEE (Legal Reference) policies correspond to TASB's (LEGAL) Frameworks. The TEE (Legal Reference) policies currently include letter codes and topical

descriptions that are identical or substantially similar to the Coding Structures in TASB's (LEGAL) Frameworks.

40. TEE's Policy Connect service is a website or online platform on which TEE reproduces and publicly displays (Legal References) for its customer school districts, including Carroll Independent School District ("Carroll ISD") and Midland Independent School District ("Midland ISD"). TEE's Policy Connect platform replicates many of the features found on TASB's Policy Online. The home page of TEE's Policy Connect platform includes a "Browse All Policies" box ("Browse Box") that supports online index browsing, keyword searches over section titles and policy content, filtering, and retrieval and display of policies. Like Policy Online, users can search for letter codes and keywords in the coding structures in TEE (Legal References). **Exhibits 16, 15, and 14** are true and correct copies of the expanded Browse Box indices retrieved from the TEE Policy sites hosted by TEE for (a) Carroll ISD, in August 2025 (Exhibit 16), (b) Midland ISD, in October 2025 (Exhibit 15), and Carroll ISD, in May 2025 (Exhibit 14). (These exhibits are copies of FAC Exhs. D, ECF Doc. 12-4 (Exhibit 16), E, ECF Doc. 12-5 (Exhibit 15), and F, ECF Doc. 12-6 (Exhibit 14)).

41. On or about July 12, 2025, TASB employes under my direction retrieved from the TEE Policy Connect site for Carroll ISD, approximately 300 TEE (Legal References) with the phrases "Date Issued: 2024-11-01" and "UPDATE: 1" in the footer (collectively, "**TEE Update 1 (Legal References)**"). In January 2026 I retrieved copies of two additional TEE (Legal References) (also identified as "Update 1") from the TEE Policy Connect site for Carroll ISD. Exhibits 18 and 19 are true and correct copies of TEE (Legal References) with

the following letter codes and subject matter summaries:  DNA Performance Appraisal: Evaluation of Teachers (**Exhibit 18**); and GKDA Nonschool Use of School Facilities: Distribution of Nonschool Literature (**Exhibit 19**). Based on the date in the footer, TEE posted the GKDA (Legal Reference) (Exhibit 35) to the Policy Connect site in December 2025.  FAC Exh. X, ECF Doc. 12-24, lists these TEE Update 1 (Legal References), each of which was reproduced and publicly displayed on, and retrieved from, TEE's Policy Connect Site for Carroll ISD in July 2025 and January 2026.

42.     FAC Exh. Y, ECF Doc. 12-25, includes true and correct copies of a single representative page from each of the TEE Update 1 (Legal References) listed in FAC X, ECF Doc. 12-24. To the best of my belief based on publicly-available sources, the TEE Update 1 (Legal References) listed in FAC Exhs. X and Y  (or subsequent revisions of these (Legal References that use the same codes) presently are or can be reproduced, retrieved, and/or publicly displayed on the TEE Policy Connect Site for Carroll ISD.

43.     Each TEE (Legal Reference) includes a letter code and a subject matter summary. Hundreds of TEE (Legal References) include letter codes and subject matter summaries identical or substantially similar to the TASB Letter Codes and Subject Matter Summaries in the corresponding TASB (LEGAL) Frameworks.

44.     The TEE (Legal References) in FAC Exhs. X and Y, ECF Docs. 12-24, 12-25, copy verbatim or with substantial similarity all or substantially all of the Coding Structures listed in Exhibit 1.

45.     Through the Browse Box feature, TEE reproduces and displays TASB's Letter Codes and Subject Matter Summaries on the TEE Policy Connect pages for TEE customers.

When a user clicks on the "+" symbol next to a section in the Browse Box, the TEE Policy Connect site displays an expanded Browse Box index, that is, a listing of all TEE letter codes and subject matter summaries in the section, and this expanded Browse Box Index copies the text and compilation in TASB's Coding Structures and Section Indices.

46.     **Exhibits 16 and 15** ( are true and correct copies of expanded Browse Box indices displayed on the TEE Policy sites hosted by TEE for (a) Carroll ISD, displayable or displayed on or about August 3, 2025 (Exhibit 16), and (b) Midland ISD, displayable or displayed on or about October 28, 2025 (Exhibit 15). These expanded Browse Box indices reproduce identical or substantially similar copies of all or substantially all TASB Letter Codes and topics and subtopics listed in Exhibit 1.

47.     **Exhibit 5** is an annotated version of Exhibit 2 that uses highlighting to show new or revised Coding Structure text added to the Section Indices in the Registered Updates.   **Exhibit 6** provides an annotated side-by-side comparison between Exhibit 5 and the July 2025 Browse Box Listing for Carroll ISD (Exhibit 16).

48.     For example, the table below is an excerpt from Exhibit 6 that provides a side-by-side comparison between, on the left, an excerpt from TASB's annotated index of Section E (Exhibit 5), and on the right, an excerpt from the expanded browse box listing from TEE's Policy Connect site for Carroll ISD (Exhibit 16):

| | | | | | |
|---|---|---|---|---|---|
| EI | ACADEMIC ACHIEVEMENT | | EI | Academic Achievement | |
| EIA | Grading/Progress Reports to Parents | | EIA | Academic Achievement_ Grading_Progress Reports To Parents | |
| EIAA | Examinations | | | | |
| EIAB | Makeup Work | | | | |
| EIB | Homework | | EIC | Academic Achievement– Class Ranking | |
| EIC | Class Ranking | | | | |
| EID | Honor Rolls | | EIE | Academic Achievement– Retention And Promotion | |
| EIE | Retention and Promotion | | | | |
| EIF | Graduation | | EIF | Academic Achievement– Graduation | |
| | | | EK | Testing Programs | |

49. Some of the Letter Codes and Subject Matter Summaries in the expanded Browse Box indices in Exhibits 16 and 15 reproduce and display Letter Codes and Subject Matter Summaries for (Legal Reference) works that, upon information and belief, are not available on the TEE Policy Connect site for Carroll ISD and/or are not live (Legal References), for example, EF (Legal Reference). EHDB (Legal Reference), and EHDF (Legal Reference).

50. In a March 30, 2023, Facebook post, TEE posted a copy of a March 29, 2023, TASB email to the CSA (Texas Council of School Attorneys) in which TASB explains its copyright rights in TASB's (LEGAL) policies, letter codes, and coding structure. TEE's Facebook post responds to TASB's email as follows: "TASB is in full panic mode as districts realize the only value they offer is a "policy coding structure"." FAC Exh. BB, ECF Doc. 12-28, is a true and correct copy of the March 30, 2023, Facebook post by TEE.

51. On the "Legal FAQ" page of TEE's website, TEE poses a rhetorical question: "Will our district be at risk of violating TASB's copyright if we leave TASB?" TEE answers this

question as follows: "School districts own the contents of their locally adopted policies. While TASB has asserted that it has copyrighted the organizational structure of school district policies, those policies can be re-organized." (Exhibit 10, p. 6).

52. Based on review of publicly available information at the time, for a period of time in 2025, TEE's Policy Connect site for Carroll ISD displayed and posted (Legal References) that copied TASB's Subject Matter Summaries but used number codes instead of TASB's Letter Codes ("**Substitution Number Codes**"). TEE's use of the Substitution Number Codes can be seen in Exhibit 14, the May 2025 expanded Browse Box listing for Carroll ISD, and in FAC Exh. R, a true and correct copy of TEE (Legal Reference) 5.8.2.8 with Subject Matter Summary "Special Programs: Other Special Populations" (FAC Exh. R, ECF Doc. 12-18). The Subject Matter Summary for (Legal Reference) 5.8.2.8 is identical to the Subject Matter Summary for TASB's EHBH (LEGAL) Framework. TEE copied the TASB Letter Codes in the TEE Substitution Number Codes by mechanically replacing each letter in TASB's Letter Code with the number of the letter's position in the alphabet (1 for A, 2 for B, etc.). TEE Substitution Number Codes are informationally equivalent to TASB's Letter Codes for the same topics. When TEE's codes are sorted in numerical order, they are arranged in the same order as TASB's codes. TEE subsequently changed its Substitution Number Codes to copies of TASB's Letter Codes, and that's what appears on the TEE Policy Connect sites as of the time of this declaration.

53. TASB notified TEE that it was infringing TASB's copyrights in a letter sent on August 6, 2025. Based on my review of their TEE Policy Connect websites, I believe TEE

launched new Policy Connect sites for Crane ISD and Lingleville ISD after TASB sent this letter, with reproduction and public display of TASB Registered Works.

54. Carroll ISD terminated its TASB Policy Services at the end of the 2022-23 subscription year and its school board is no longer a TASB member. Other TASB members have terminated their subscriptions to TASB's Policy Service and no longer pay the Policy Service subscription fees. As of the time of this Declaration, based on publicly available information, I understand all seven school districts that have terminated their subscriptions to TASB's Policy Service are currently using TEE's Policy Service. It is my opinion, based on all the facts stated in this Declaration, that the TASB Coding Structures and the Policy Online index are important tools to Texas educators and that TASB's loss of these Policy Service subscribers was due at least in part to TEE's continued use of TASB's Coding Structures and Section Indices with its (Legal References) and on Policy Connect. I also believe, based on publicly-available information, that TASB could continue to lose Policy Service subscribers to TEE so long as TEE can use TASB's Coding Structures and Section Indices.

55. I noted that some new materials were posted on the Policy Connect website for Carroll ISD in December 2025. The Browse Box index includes a new entry for "FOC Student Discipline—Placement in A Disciplinary Alternative Education Setting." The following is a true and correct copy of a screenshot I took from the TEE Policy Connect Site for Carroll ISD on December 12, 2025:



| | |
|---|---|
| **Section F — Students** | — |
| FI | IDENTIFICATION OF STUDENTS |
| FN | Student Rights And Responsibilities |
| FOC | Student Discipline–Placement In A Disciplinary Alternative Education Setting |
| FA | Parent Rights And Responsibilities |
| FB | Equal Educational Opportunity |
| FBA | Equal Educational Opportunity Service Animals |
| FD | Admissions |
| FDA | Admissions: Interdistrict Transfers |

56.     The TEE code for "FOC Student Discipline—Placement in A Disciplinary Alternative Education Setting" provides access to a (Legal Reference) policy on the TEE Policy Connect site, and the (Legal Reference) Policy appears to be identical in almost all material respects – Coding Structure and content – to TASB's (LEGAL) Framework "FOC Student Discipline Placement in A Disciplinary Alternative Education Setting" in Updated 119. The main difference is that the TEE version replaces TASB's Letter Codes in internal cross-references with Substitution Number Codes. In addition to the original content reflected in the Coding Structure, the Expository Text in TASB's FOC(LEGAL), the margin notes and paraphrases and exposition of the substance of the policy also reflect creative choices by TASB. FAC Exhs. FF and GG are true and correct copies of the TASB FOC(LEGAL) Framework (Update 119) (FAC Exh. GG, ECF Doc. 12-33) and the FOC policy posted on the TEE Policy Connect site (FAC Exh. FF, ECF Doc. 12-32).

27

57. Based on publicly-available information, TEE has been issuing recommendations to its member school districts regarding proposed changes to local policies following the conclusion of the 89th Texas Legislative Session, including "Local Policy Update 2025.7." FAC Exh. EE, ECF Doc. 12-31, includes a true and correct copy of TEE's document entitled Proposed Policy Changes Summary Local Policy Update 2025.7, which was included with the Agenda materials posted by Carroll ISD in connection with the December 15, 2025, Board meeting. TEE's Local Policy Update 2025.7 makes local policy recommendations for policies including those identified by these coding structures:

DGC(Local) Employer Rights and Privileges; Immunity

DP(Local) – Personnel Positions

EHBAB(Local) – Special Education: ARD Committee and Individualized Education Program

FNCD(Local) – Student Conduct: Tobacco Use and Possession

FO(Local) – Student Discipline

FOA(Local) – Student Discipline: Removal By Teacher Or Bus Driver

FOB(Local) – Out-of-School Suspension

FOF(Local) – Students With Disabilities

Each of these is a substantially similar copy of TASB's Coding Structures listing in Exhibit 1. The local policies included in TEE Local Policy Update 2025.7 also include substantially similar copies of the same TASB Coding Structures. (FAC EE, ECF Doc. 12-31, pp. 4-19). Based on publicly-available information and the redlining in Exhibit 33, some of the proposed revisions to local policies had been previously adopted by Carroll ISD, but in other

28

cases, TEE recommended that CISD adopt new policies. In TEE Local Policy Update 2025.7,

TEE recommended that Carroll ISD adopt new local policies for codes DGC and EHBAB.

I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

Dated: January 22, 2026

By: _____
Amanda Bigbee