**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **TEXAS ASSOCIATION OF SCHOOL BOARDS, INC., A TEXAS NONPROFIT CORPORATION;** *Plaintiff* | § | **No. 1:25-CV-01863-DH** |
| **v.** | § | |
| **TEXANS FOR EXCELLENCE IN EDUCATION, INC., A DELAWARE NONPROFIT CORPORATION;** *Defendant* | § | |

**ORDER**

Plaintiff Texas Association of School Boards (TASB) moves to compel Defendant Texans for Excellence in Education (TEE) to respond to 3 interrogatories.[1] Dkt. 51. More specifically, with respect to TASB's Interrogatory No. 1, which seeks information regarding persons with knowledge of relevant facts, TASB complains that TEE relies on improper objections to unilaterally limit the scope of its responses. *Id.* at 3-5. In Interrogatory Nos. 2 and 3, TASB seeks information regarding the "financial support" TEE, a non-profit, receives, along with the identities of any donors that are the sources of that financial support. *Id.* at 5-10. TEE objected that these requests violated its First Amendment right to freely associate and, in any event, were irrelevant and disproportional to the needs of the case.

[1] The parties resolved their dispute regarding a fourth interrogatory prior to the hearing on the motion. *See* Dkt. 57, at 3.

The Court set the motion for hearing. Dkt. 55. At the conclusion of the hearing, the Court took the dispute under advisement. Having considered the parties' filings, the applicable law, and the arguments made at the hearing, the Court **GRANTS IN PART and DENIES IN PART** the motion, for the reasons explained below.

## I. BACKGROUND

TASB, a nonprofit education association, initiated this lawsuit based on TEE's alleged infringement of the copyrighted school-board governance and operation materials TASB provides to school districts. Dkt. 12, at 1-2. Through its policy service, TASB provides school boards in Texas with material intended to support compliance with the laws and regulations governing its member school boards. *Id.* at 4-7. As part of its service, TASB produces compilations of "federal and state statutes and regulations, case law, Texas Attorney General opinions, and Texas Commissioner of Education decisions governing Texas public school districts, along with commentary and expository text," for which it has registered several copyrights. *Id.* at 7-15. TASB alleges that TEE, a competitor, has copied the section indices, coding structures, and expository texts used in TASB's legal compilations and offered them to clients at a lower price. *Id.* at 15-51. Based on these allegations, TASB brings one claim of copyright infringement against TEE under 17 U.S.C. § 501. *Id.* at 51-52.

## II. DISCUSSION

### A. Interrogatory No. 1 – Identity of "TEE Policy Participants"

In its first interrogatory, TASB asks TEE to identify "all TEE Policy Participants and describe the role and activities of each such TEE Policy Participant in or relating to the development, design, creation, preparation, marketing,

reproduction, display, or distribution of TEE Policy-Related Materials." Dkt. 51-1, at 5. The request includes two defined terms, "TEE Policy Participants" and "TEE Policy-Related Materials" which TASB defines as:

> **TEE Policy Participant** means any Person who has participated in, encouraged, or contributed to the development, design, creation, preparation, marketing, reproduction, display, or distribution of any TEE Policy-Related Materials in whole or in part. For the avoidance of doubt, (a) "TEE Policy Participant" includes, but is not limited to, vendors, contractors, and attorneys; and (b) "participated in, encouraged, and contributed to" includes but is not limited to: participated in, authored, revised, contributed to, caused, influenced, effected, affected, led, encouraged, guided, managed, directed, supervised, was responsible for, instructed, controlled, had the right to supervise or control, advised, made or discussed executive, management, or strategic decisions, played a significant part in bringing about, induced, coordinated, helped, aided, assisted, authorized, approved, was involved in, or had or took a part in.
>
> **TEE Policy-Related Materials** means (i) means any document, publication, resource, or other material (ii) created, authored, or prepared by TEE, or by any Person for, or on behalf of TEE, (iii) concerning policy guidance or assistance or legal guidance and assistance to public schools, including without limitation (Legal Reference) policies, Local Policies, Local Policy Updates, updates (for example, documents with "UPDATE: 1" in footer), and any materials hosted or displayed on a Policy Connect site, model handbooks, model codes of conduct, and all drafts, examples, or promotional materials concerning such policy materials.

*Id.* at 4-5. In response, TEE identified six individuals, but it also objected that the interrogatory was "vague, ambiguous, and overbroad," noting the expansive definitions were "inherently subjective and overlapping." Dkt. 51-2, at 3-4.

TASB asks the Court to overrule TEE's objections and compel a more fulsome response. TEE responds that it has fully responded to the interrogatory, at least as well as it could in light of the "incomprehensible" definitions. Dkt. 52, at 9. To address these concerns, TASB offered to narrow the scope of the definitions by removing the

"includes, but is not limited to" language, but TEE argues this does little to address the concerns raised in its objections.

The Court agrees with TEE that its response to Interrogatory No. 1 is sufficient. At the hearing, TASB noted that it had discovered three individuals in its review of TEE's document production who should have been disclosed as responsive to Interrogatory No. 1, but who TEE did not include in its response. But TASB also admitted that it had not raised this matter with TEE prior to the hearing, and, therefore, the parties could not meaningfully confer regarding the sufficiency of the response. TASB's extensive, multi-faceted definitions have obscured the scope of this interrogatory to the point that it is inscrutable. Moreover, if read as broadly as it could be read, the Court finds that the scope extends beyond the bounds of relevance and proportionality that Rule 26(b)(1) requires. The Court is confident that, between TEE's ongoing duty to supplement its responses and the fact that over three months remain in the discovery period, that TASB will obtain the discovery it needs to identify the individuals who played a role in developing the allegedly offending TEE product(s).

Accordingly, the Court **SUSTAINS** TEE's objections and **DENIES** TASB's motion as to Interrogatory No. 1.

### B. Interrogatory Nos. 2-3 – TEE Financial Support and the Identity of TEE Donors

In this second dispute, TASB asks the Court to overrule TEE's objections to two interrogatories related to TEE's finances and to compel responses. TEE objected that the requests failed 26(b)(1)'s relevance and proportionality strictures and that

forcing TEE to disclose its donors would violate its First Amendment right to freely associate. The challenged interrogatories read as follows:

> **Interrogatory No. 2:** Describe in detail all TEE Policy Financial Support from December 28, 2020 to the present. "Describe in detail," for this Interrogatory No. 2, means (a) to describe the amount of the TEE Policy Financial support, the date it was provided or pledged, a brief description of the nature of the Financial Support, and (b) to either Identify or provide a unique identifier (e.g., "Supporter A," "Supporter 2") for each different Person whose TEE Policy Financial Support is described in the response to this Interrogatory No. 2.
>
> **Interrogatory No. 3:** If Your response to Interrogatory No. 2 includes any unique identifiers for any Person who provided TEE Policy Financial Support, Identify the Person corresponding to each such unique identifier.

Dkt. 51-1, at 5. In short, in Interrogatory No. 2, TASB seeks TEE's sources of funding, and in Interrogatory No. 3, TASB seeks the identity of the funders.

1. Interrogatory No. 2 – Funding Sources

TASB argues that this request is relevant to its damages case and to its response to TEE's fair-use defense. Dkt. 51, at 6-8. As for damages, TASB argues that it will have to offer evidence of TEE's gross revenues, which arguably include donations, that are attributable to the alleged infringement. *Id.* at 7. TASB also contends that details regarding TEE's funding are relevant to factors considered in determining statutory damages and disgorgement remedies. *Id.* at 6-7. TEE responds that TASB already has all it needs in the form of its own records related to lost revenue from the seven member districts that left TASB for TEE, along with the revenue numbers TEE produced regarding those same districts. Dkt. 52, at 4. As for fair use, TASB argues this information could help TASB prove that TEE's use of TASB's materials is commercial in nature and therefore not subject to the fair-use

defense. Dkt. 51, at 6. TEE again argues that TASB already possesses all it needs to respond to the fair-use defense, pointing to various undisputed facts about TEE's business model and documents TEE has already produced. Dkt. 52, at 4-5. TEE also notes that it "does not deny the commercial nature of its alleged infringing uses—a single sub-factor that is *not* outcome determinative." *Id.* at 5.

On the relevance point, the Court agrees with TASB that these materials are discoverable. The nature of TEE's finances will factor heavily in how TASB proves its remedies, should it prevail on the merits. And while TASB may indeed have some of what it needs on the fair-use front, that does not render these materials irrelevant or undiscoverable. The Court, therefore, **OVERRULES** TEE's relevance objections.

TEE also argues that the request is overbroad because it seeks information dating back to December 28, 2020, noting that TEE wasn't founded until 2021 and did not begin operating until 2023. *Id.* at 5-6; *see also* Dkt. 12, at 15 (TASB's First Amended Complaint, claiming that "[u]pon information and belief, TEE began offering services to Texas public school boards and independent school districts in or after June 2023"). TASB responds that "the 2020 date is intended to encompass TEE Policy Financial Support, if any, provided before TEE was incorporated," Dkt. 51, at 10, presumably going to TASB's contributory-infringement theory, which the Court addresses below. TASB also argues that "[i]nformation about TEE Policy Financial Support provided early in the history of TEE is relevant to the commercial purposes for which TEE was first organized" and that "TASB needs this information to examine TEE's witnesses regarding their knowledge of 'the organization of TEE.'" *Id.*

The Court finds these explanations sufficient and therefore **OVERRULES** TEE's overbreadth objections.

Having overruled TEE's objections, the Court **GRANTS** TASB's motion as to Interrogatory No. 2.

2. Interrogatory No. 3 – The Funders

TASB alleges in its First Amended Complaint that "after a reasonable opportunity for discovery, there is likely to be evidentiary support to show that one or more entities or individuals affiliated with TEE have actively participated in TEE's infringement or have committed contributory copyright infringement by inducing, causing, or materially contributing to TEE's direct infringement described herein." Dkt. 12, at 48. TASB essentially argues that if a company approached an investor and proposed a business plan in which the company would re-publish a competitor's copyright-protected materials, and the investor decided to invest in the venture, then that investor could be liable for contributory infringement. Dkt. 51, at 7. Here, TASB contends, TEE's donors could be liable for contributory infringement in the same manner. TASB also argues that TEE's funders' knowledge could be relevant to its claims for willful infringement and to TEE's fair-use defense. *Id.* at 8.

The Court believes the information sought in Interrogatory No. 3—the identity of individuals who have provided financial support to TEE—is relevant to the claims that are asserted (or will be asserted) and are proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The Court further agrees with TASB, as noted above, that

the requested timeframe is reasonable in light of the asserted need for this information. But that does not end the inquiry.

Relying on cases holding that compelled donor disclosure implicates a parties' First Amendment right to freely associate, TEE argues the Court should sustain its "First Amendment privilege" objection, *see* Dkt. 51-2, at 2, and deny TASB's motion, Dkt. 52, at 2-3. Cases discussing the First Amendment in this context have held that courts should apply "exacting scrutiny" to such requests. *See, e.g.*, *X Corp. v. Media Matters for Am.*, 120 F.4th 190, 197 (5th Cir. 2024) (quoting *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 611 (2021)). The parties dispute whether the First Amendment applies in the first place. TASB contends it does not because the dispute arises between two private entities. Dkt. 51, at 9. The Fifth Circuit noted this distinction in *X Corp.*, and while the court ultimately decided the issue by applying Rule 26(b)(1)'s standard, the panel appeared to acknowledge that First Amendment rights could be implicated in a dispute between private parties. 120 F.4th at 197-98, 197 n.5. Without the benefit of clear authority on the question from the Fifth Circuit, the Court will assume the exacting-scrutiny standard applies.[2]

The Court finds the analytical framework used in *Tree of Life Christian Schools v. City of Upper Arlington* particularly helpful. No. 2:11-CV-00009, 2012 WL 831918,

[2] Several other Circuit courts have instructed that the First Amendment privilege applies to discovery orders "even if all the litigants are private entities." *See, e.g., Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987) ("Although the First Amendment does not normally restrict the actions of purely private individuals, the amendment may be applicable in the context of discovery orders, even if all of the litigants are private entities."); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010).

at *3 (S.D. Ohio Mar. 12, 2012). In that case, the court first assessed whether "the party opposing discovery to demonstrate[d] an 'arguable first amendment infringement.'" *Id.* (quoting *Perry*, 591 F.3d at 1160). That is, has the party "demonstrate[d] an objectively reasonable probability that disclosure will chill associational rights"? *Id.* (internal quotation marks omitted). If it has, "courts then shift the burden to the party seeking discovery to demonstrate an interest in obtaining the disclosures it seeks ... which is sufficient to justify the deterrent effect ... on the free exercise ... of the constitutionally protected right of association." *Id.* (cleaned up). In assessing this, "courts 'balance the burdens imposed on individuals and associations against the significance of the ... interest in disclosure.'" *Id.* (quoting *Perry*, 591 F.3d at 1160). "Courts will look to a variety of factors in balancing these interests including (1) the relevance of the evidence; (2) the necessity of receiving the information sought; (3) whether the information is available from other sources; and (4) the nature of the information." *Id.* (internal quotation marks omitted). "'Importantly, the party seeking the discovery must show that the information sought is highly relevant to the claims or defenses in the litigation—a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1).'" *Id.* (quoting *Perry*, 591 F.3d at 1161).

As to the first question, the Court finds that TEE has made a sufficient threshold showing that compelling disclosure of its donors could chill its associational rights. *Tree of Life*, 2012 WL 831918, at *3. TEE points to TASB's suggestion that "it will sue TEE's donors," Dkt. 52, at 5, which is consistent with TASB's asserted

justification for the discovery, i.e., to explore potential contributory-infringement claims, Dkt. 54, at 1. TEE further contends that "TASB wants to use even more civil litigation to punish donors for supporting a political rival" and that "TASB wants to identify [TEE's] donors, sue them, and cut off TEE's support." Dkt. 52, at 5. While the Court acknowledges that this dispute between private parties is not in the heartland of First Amendment donor-disclosure cases, the Court concludes that TEE has made a sufficient showing to shift the burden to TASB to demonstrate that its interest in obtaining TEE's donors' identities is sufficient to objectively suggest that the disclosure will have a deterrent effect on TEE's, or its donors', associational rights. *Perry*, 591 F.3d at 1160 (explaining that arguable First Amendment infringement may be shown by "consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights").

TASB confirmed at the hearing on this motion that its sole justification for seeking TEE's donors' identities is to explore potential contributory-infringement claims and defendants. TEE does not contest that the donors' identities would be relevant to this inquiry; it instead chooses to focus on TASB's alleged competitive and/or political motivations. *Id.* Irrespective of TASB's underlying motivation, the Court finds that this evidence *could be* highly relevant to the issue of contributory infringement. But on this record—both parties rely exclusively on attorney argument to support their positions—the Court cannot assess whether the information TASB seeks could be obtained through some other channel that might have less of a chilling effect on TEE's freedom to associate. As it stands, the Court finds that TASB's

assertion in a single paragraph of its 55-page complaint that it *may* assert a contributory-infringement claim, without more, is insufficient. Should TASB, with further investigation and discovery, encounter a more concrete basis for establishing the need for this information, and that it can *only* be obtained in the form of an interrogatory directed at TEE, then the Court might reach a different conclusion, should the dispute arise again.

For these reasons, the Court **SUSTAINS** TEE's First Amendment-privilege objection to Interrogatory No. 3 and **DENIES** TASB's motion as to this interrogatory.

## III. ORDER

The Court **GRANTS IN PART and DENIES IN PART** TASB's motion, Dkt. 51. The Court **GRANTS** the motion as to Interrogatory No. 2, **OVERRULES** TEE's objections to that interrogatory, and **ORDERS** TEE to respond to the interrogatory within 21 days of this order. The Court **DENIES** the motion in all other respects (and sustains/overrules the remaining objections consistent with the discussion above).

SIGNED August 7, 2026.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE